# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATE OF AMERICA,

     **Plaintiff,**     **Case No. 2:25-CR-20165**

**vs.**            **HON. NANCY G. EDMUNDS**

MATTHEW WEISS,

     **Defendant.**

## MOTION TO DISMISS COUNTS 11-20 OF THE INDICTMENT

Defendant Matthew Weiss, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 12(b)(1), moves to dismiss Counts 11 through 20 ("Counts 11-20") of the indictment in the above-captioned matter.[1]

Counts 11-20 of the indictment represent a test case for an untested theory. In these counts, the Government attempts to turbocharge punishments for routine computer trespass under the Computer Fraud and Abuse Act by treating those acts as "Aggravated Identity Theft" under 18 U.S.C. § 1028A. If its gambit succeeds, computer hacking that ordinarily leads to probation will be transformed into an

---

[1] Pursuant to LR 7.1(a), counsel discussed the issues presented in this Motion with government counsel on January 24, 2025 and in a more recent conversation. In both instances government counsel indicated that the government will oppose this Motion.

offense with a two-year mandatory minimum sentence of incarceration for each act
of hacking—up to twenty years total.

**BRIEF IN SUPPORT**

Pursuant to Fed. R. Crim. P. 12(b)(1), Mr. Weiss moves this Court to reject the government's overreach and dismiss Counts 11-20 of the indictment that rely upon this unstable foundation. These counts rely upon exactly the kind of expansive reading of the Aggravated Identity Theft statute that the Supreme Court rejected in *Dubin v. United States*, 599 U.S. 110 (2023). Under *Dubin*, the government's effort to transform computer trespass into aggravated identity theft must fail.

Congress has created a careful framework for how to punish computer hacking, and the government's novel theory conflicts with Congress's design in exactly the way *Dubin* rejects. This case should instead proceed as Congress intended: As a prosecution under the Computer Fraud and Abuse Act, not the Aggravated Identity Theft statute.

For these reasons, explained fully below, this Court should dismiss Counts 11-20 of the indictment for failure to state an offense.

## I. INTRODUCTION TO COMPUTER HACKING AND THE LEGAL FRAMEWORK FOR PUNISHING COMPUTER HACKING OFFENSES

Computer hacking is "digital trespassing." *Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024). It is a form of "breaking and entering" into a computer. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (quoting H.R. Rep. No. 98-894, at 20 (1984)). It usually occurs in two stages. First, hackers figure out a way

to gain technological access to a computer. In some cases, this requires exploiting a computer security flaw to gain access, "just . . . as if they broke a window and crawled into a home while the occupants were away." *Id*. (quoting H.R. Rep. No. 99-612, at 5–6 (1986)). In other cases, hackers enter someone else's username and password without permission to access their accounts, much like picking a lock or using a lost key. *See, e.g.*, *United States v. Batti*, 631 F.3d 371 (6th Cir. 2011) (former employee hacked into former boss's computer by "guess[ing] the new password through trial and error"); *United States v. Xiafen Chan*, 2015 WL 1020330 (S.D. Ohio 2014) (employee "obtained a co-worker's password to restricted portions" of sensitive government network and accessed the computer without permission). After gaining technological access, the hacker then enters the computer without permission.

Congress has responded to the problem of hacking by enacting the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. *See Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024) ("The Computer Fraud and Abuse Act protects our Nation's computers from hacking."). The key part of the statute—and the section charged here—is the simple trespass statute found in 18 U.S.C. § 1030(a)(2)(C). This statute creates a misdemeanor offense that punishes anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information." 18 U.S.C. § 1030(a)(2)(C). This misdemeanor trespass crime can

become a felony, however, if one of several criteria are met. Of particular importance to this case, a misdemeanor computer trespass crime can become a felony if it is "in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State." §1030(c)(2)(B).

A majority of defendants in CFAA cases receive non-jail punishments: "most receive probation, a fine, a suspended sentence, or no sentence at all." Jonathan Mayer, *Cybercrime Litigation*, 164 U. Pa. L. Rev. 1453, 1477 (2016) (reviewing sentences in CFAA cases). The typically modest punishment for hacking crimes reflects a long Congressional history. From 1996 until 2001, Congress experimented with a 6-month mandatory minimum prison sentence for certain types of CFAA violations. *See* § 805(c), Antiterrorism and Effective Death Penalty Act, 110 Stat. 1305 (1996). This experiment was a failure, however: Instead of deterring hacking, the 6-month mandatory minimum merely "discouraged some prosecutors from bringing small cases." Internet Denial of Service Attacks and the Federal Response, Hearing Before the House and Senate Judiciary Committees 332 (February 29, 2000) (testimony of James X. Dempsey). In 2001, Congress reversed course and eliminated the mandatory minimums, *see* Pub. L. No. 107-56, § 808(2)(i) (2001).

The sentencing scheme for CFAA crimes that exists today was set in motion in 2002, when Congress directed the Sentencing Commission to create new sentencing guidelines for CFAA crimes to address the "need for an effective

3

deterrent and appropriate punishment to prevent such offenses." Pub. L. 107-296 §

225 (codified at 6 U.S.C. § 145).   The Sentencing Commission responded to

Congress's command by substantially rewriting § 2B1.1 for hacking offenses in

2003.   *See* United States Sentencing Commission, Increased Penalties for Cyber

Security Offenses, May 2003 (explaining the Commission's changes in a required

report to Congress).[2]   The 2003 amendments added a series of rules specifically for

CFAA crimes that remain in effect today, albeit in non-binding post-*Booker* form.

*See id*. at 4-13 (detailing the 2003 changes).

Under this framework, guidelines calculations for CFAA offenses begin with

a base offense level of 6.   *See* § 2B1.1(a)(2). The government's primary means of

increasing sentence recommendations for CFAA crimes is by establishing a high

dollar loss under the fraud guidelines chart. *See, e.g*., *United States v. Murphy*, 815

Fed. Appx. 918 (6th Cir. 2021) (reviewing a CFAA sentencing calculated under §

2B1.1 in which the loss amount over $550,000 added 14 offense levels). *See*

*generally* Orin Kerr, *Trespass, Not Fraud: The Need for New Sentencing Guidelines*

*in CFAA Cases*, 84 Geo. Wash. L. Rev.  1544, 2546-57 (2016) (detailing the history

and operation of the Guidelines under § 2B1.1).   Absent a showing of high dollar

---

[2] The report is available online at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/computer-crime/200304_RtC_Increased_Penalties_Cyber_Security.pdf.

loss, the recommended sentence for CFAA violations tends to be probation. *See* Mayer, *Cybercrime Litigation*, 164 U. Pa. L. Rev. at 1477.

## II. THE GOVERNMENT'S NOVEL EFFORT TO ADD DECADES OF JAIL TIME FOR HACKING OFFENSES UNDER THE AGGRAVATED IDENTITY THEFT STATUTE SHOULD BE REJECTED

Counts 11-20 of the indictment in this case take a radically different approach based upon a novel bootstrapping theory: In the government's view, the entering of login credentials to access another's account—the standard way to begin a felony computer trespass under the CFAA—also triggers the two-year mandatory minimum punishment of the Aggravated Identity Theft statute, 18 U.S.C. § 1028A. Section 1028A(a)(1) provides:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

Under the government's theory, routine acts of hacking can be double-counted to dramatically enhance punishments: The same misuse of usernames and passwords that enables hackers to enter computers in violation of the CFAA **also** counts as a theft of account holders' identities, adding a two-year mandatory minimum for every felony hacking crime on top of the hacker's otherwise-existing CFAA liability. The username and password are "means of identification of another," the argument runs, and typing in the username and password is "using" them to access the account.

5

§ 1028A(a)(1). Instead of entering login credentials and then viewing information in an account being a mostly probation offense, suddenly a two-year mandatory minimum penalty for each act of hacking applies— creating, under Counts 11-20, up to **twenty years in prison** in addition to Mr. Weiss's potential liability under the CFAA.

Counsel are aware of no court decision ever accepting this theory, even though the CFAA and the Aggravated Identity Theft statute have both been in effect for several decades. This Court should not be the first to do so.  The government's effort to revolutionize the law of computer hacking by pairing the CFAA and the Aggravated Identity Theft statute in this way is untenable.   Because the government's theory presents an issue of law, rather than a dispute of fact, it is an appropriate subject for resolution under Fed. R. Crim. P. 12(b)(1).  *See, e.g., United States v. Benderoff*, No. 20-CR-20380, 2022 WL 4137813 at *9 (E.D. Mich. Sept. 12, 2022) (dismissing indictment counts for failure to state an offense); *United States v. Saucedo-Saucedo*, No. 2:24-cr-20468, 2025 WL 2671055, at 3-4 (E.D. Mich. Sept. 17, 2025) (dismissing count of § 1028A for failure to state an offense).

### III.   *DUBIN V. UNITED STATES* REQUIRES DISMISSAL BECAUSE THE FACTS ALLEGED IN THE INDICTMENT INVOLVE NO DECEPTION, USING AN ACCOUNT NAME AND PASSWORD IS A "GARDEN VARIETY" VIOLATION OF § 1030, AND THE MEANS OF IDENTIFICATION IS NOT "THE CRUX OF WHAT MAKES THE UNDERLYING OFFENSE CRIMINAL"

The government's theory requires exactly the kind of broad reading of the Aggravated Identity Theft statute that the Supreme Court recently rejected in *Dubin v. United States*, 599 U.S. 110 (2023).   Under *Dubin*, this case should proceed as Congress intended: As a prosecution under the CFAA, not a prosecution under the Aggravated Identity Theft statute.   Counts 11-20 should be dismissed.[3]

### A. BACKGROUND

In *Dubin*, the defendant committed health care fraud by submitting an inflated bill to Medicaid.   *See id*.   The government charged Dubin with both felony health care fraud and Aggravated Identity Theft under 18 U.S.C. § 1028A.   The government argued that Dubin was liable for the two-year mandatory minimum punishment pursuant to § 1028A because he had included the patient's identifying Medicaid reimbursement number to seek the inflated payment.   In the government's view, this satisfied the literal words of § 1028A:   Dubin had "used" the patient's "means of identification" in "relation to" the predicate felony of health care fraud.   *Id*. at 115.

---

[3] Mr. Weiss reserves the right to file an additional motion to dismiss the felony aspects of the remaining counts under the CFAA, as they are also based on a separate bootstrapping theory.   However, this Motion is solely addressed to Counts 11-20, the counts that allege violations of § 1028A.

The Supreme Court disagreed, ruling that Dubin had not violated § 1028A. According to the Court, § 1028A must be interpreted to draw a sharp distinction between underlying predicate offenses and § 1028A.  The *Dubin* Court noted that Section 1028A imposes a "severe" penalty on top of predicate offenses that are far less punitive.  *Id*. at 127 ("It adds a 2-year mandatory prison sentence onto underlying offenses that do not impose a mandatory prison sentence of any kind."). It was therefore essential to avoid an interpretation of § 1028A that "creates an automatic 2-year sentence for [a] generic" commission of a predicate offense and that "collapses the enhancement into the enhanced." *Id*. at 129, 128. If § 1028A applies "virtually automatically to a swath of predicate offenses," the Court warned, "the prosecutor can hold the threat of charging an additional 2-year mandatory prison sentence over the head of any defendant who is considering going to trial." *Id*. at 131. It was therefore essential to limit liability to specific circumstances that truly "warrant[] a 2-year mandatory minimum"— true acts of stealing a person's identity while committing a fraud scheme—rather than have it apply to "garden-variety" violations of predicate offenses.  *Id*. at 129, 122.

Accordingly, *Dubin* held that a defendant only "uses" means of identification "in relation to" a predicate felony when the means of identification are "at the crux of the underlying criminality, not an ancillary feature" of the predicate offense. *Dubin*, 599 U.S. at 129.   A "causal relationship" between the use of means of

identification and the predicate offense, in which the use of identity information enabled the offense, was not enough. *Id*. at 131. Rather, the "means of identification" itself had to be "used deceptively[.]" *Id*. at 123. This was the correct reading, according to the Court, because § 1028A's terms were centered around an "ordinary understanding of identity theft," *id*. at 120— an understanding by which "someone steals personal information about and belonging to another, such as a bank-account number or driver's-license number, and uses the information to deceive others." *Id*. at 122. (quoting Black's Law Dictionary 894 (11th ed. 2019)).

Dubin could not be held liable for § 1028A under that standard, the Court ruled, as he had committed a "generic overbilling" offense. *Id*. at 129.  While this use of the patient's reimbursement number made the fraud offense possible, the means of identification was not the "crux" of the fraud. "The crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee. The patient's name was an ancillary feature of the billing method employed." *Id*. at 132.

The Supreme Court's ruling in *Dubin* requires the dismissal of Counts 11-20 in this case. Mr. Weiss's alleged conduct is breaking and entering into computers. He allegedly "picked the electronic locks" of online accounts, and he gained entry into those accounts.  If the government can prove those alleged facts, they make out classic violations of the computer trespass law found in 18 U.S.C. § 1030(a)(2)(C).

9

But there is nothing in those alleged facts that make Mr. Weiss's conduct distinct crimes of "identity theft" under *Dubin*.

*Dubin* requires dismissal for three closely related reasons:

### 1. *There Was No Act of Deception.*

Under *Dubin,* the "means of identification" must be "used deceptively." *Id*. at 123. Deception is crucial, *Dubin* teaches, because the "ordinary understanding of identity theft," *id*. at 120, requires tricking someone into giving up money or property based on a false representation of who they are. *See id*. at 122.  Thus, the defendant must obtain identification information of another and "use[] the information to deceive others." *Id*. at 122.  The act of masquerading as a specific and real person who is owed some special treatment, allowing the defendant to trick the victim into handing over money or property in response based on that false identity, is what allows the identity to be considered stolen. *See id*. *See also Flores-Figueroa v. United States*, 556 U.S. 646, 655-57 (2009).

Counts 11-20 cannot satisfy this requirement.  Counts 11-20 allege that Mr. Weiss entered "login identifiers" into computer servers to unlock accounts.  No one could have been deceived by these acts.  No person saw the login identifiers or made a decision based on their entry.  Further, a computer server is no more deceived by a hacker entering login credentials to enable access to an account than a physical lock is deceived by a trespasser using a stolen key to open a door to a home.  A physical

10

key is a unique means of identification that only the homeowner is supposed to have. But even so, inserting the key and unlocking the door does not steal the homeowner's identity.  Using the key merely removes the barrier to the subsequent act of home entry.

Likewise, a computer trespasser does not steal the identity of an account holder using a stolen or guessed password to access a computer server.  The server's electronic lock is not tricked by the entry of login information any more than a door's physical lock is tricked by entering a key.  The lack of deception means that no one's identity was "stolen" and § 1028A cannot apply.[4]

### 2. *The Alleged Conduct Consists of Generic Computer Trespasses.*

A second and related ground for dismissing Counts 11-20 is that *Dubin* rejects interpreting § 1028A to cover a "generic" or "garden-variety" violation of the underlying predicate crime, *id*. at 129, 122.  *Dubin* instructs that Section 1028A cannot "collapse[] the enhancement into the enhanced," *id* at 128, in a way that could transform violations of underlying predicate offenses "virtually automatically" into 2-year mandatory minimum sentences.  *Id*. at 131.

---

[4] To be sure, counsel can imagine situations in which accessing information on a computer using the personal information of others would be part of a broader scheme to defraud, which could allow this element to be satisfied. *Cf. United States v. Cuomo*, 125 F.4th 354, 368-69 (2d Cir. 2025) (affirming § 1028A convictions in a fraud scheme, where the defendant used identity information to further the fraud by accessing computer-stored data on a government computer server).  In such a case, the underlying fraud can satisfy the deception element.  This case does not allege fraud, however.  The alleged predicate felony is merely a computer trespass offense under § 1030(a)(2)—an alleged unlawful cyber-entry, not an alleged fraud.

That is exactly what Counts 11-20 attempt to do. Entering an account name and password, and then entering the computer without permission, is the ultimate generic computer trespass crime. It is the core of the predicate crime of § 1030(a)(2)(C), which prohibits "breaking and entering" into a computer. *hiQ Labs, Inc. v. LinkedIn Corp*., 31 F.4th 1180, 1196 (9th Cir. 2022) (quoting H.R. Rep. No. 98-894, at 20 (1984)). The entering of the login identifiers is what allows the defendant to gain technological access and commit the subsequent "digital trespass[]" that § 1030(a)(2) prohibits. *Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024). Under Counts 11-20, the unauthorized access predicate offense and the § 1028A enhancement try to cover the same ground. Picking the electronic locks using the means of identification is treated as identity theft, too.

Charging Mr. Weiss under § 1028A on these facts does exactly what the Supreme Court in *Dubin* insists must not happen: it "collapses the enhancement into the enhanced," *id*. at 128, applying "virtually automatically to a swath of predicate offenses," such that "the prosecutor can hold the threat of charging an additional 2-year mandatory prison sentence over the head of any defendant who is considering going to trial." *Id*. at 131.

### 3. Use of the Means of Identification is Not at the Crux of Criminality.

Finally, *Dubin* requires the dismissal of Counts 11-20 because the alleged use

12

of means of identification was not "at the crux of what makes the underlying offense criminal," but was instead "merely an ancillary feature" of the crime alleged. *Id*. at 114.

The crux of computer trespass is the act of "digital trespassing," as the Sixth Circuit acknowledged in *Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024).  Like a physical trespasser, a hacker might first need to open the digital lock.  After the technological barrier to entry has been disabled, the hacker can then enter the place where they are not supposed to go.  Once there, they see what they are not supposed to see.  And once there, they obtain information that they are not supposed to obtain.  That is what the trespass crime is fundamentally about. *See* 18 U.S.C. § 1030(a)(2)(C) (punishing one who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer").

Means of identification are not at the crux of criminality of a trespass crime because they merely act as a virtual key that help make the subsequent criminal act possible. The hacker who enters a username and password without permission is like the physical trespasser who inserts a stolen key into a lock protecting a business. Turning the key in the lock, or pressing "enter" on the keyboard, can cause the security door to unlock and remove the technical barrier to entry.  With the barriers

to entry removed, the crime is enabled. The trespasser can then take the step at the crux of the crime and actually enter the place where he is not supposed to be present.

The means of identification is merely ancillary to the subsequent criminality, however, not at the crux of it. *Cf. United States v. Duncan*, No. CR 22-76, 2023 WL 2403444, at *4 (E.D. La. Mar. 8, 2023) (use of a key fob to open a car door does not cause a trespass onto the car). Using the means of identification, whether physical keys or passwords, merely does what *Dubin* emphasized was not enough to trigger § 1028(a)(1)— it enables the predicate crime to occur.  *See Dubin*, 599 U.S. at 131 ("To be clear, being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'").  Entering the password or turning the physical key does not steal anyone's identity. It merely removes a technical barrier to entry that makes the criminal act of entry possible.  It allows the door to be opened, but it is distinct from the unlawful entry that is the "crux" of trespass crimes.  *Cf. Duncan*, 2023 WL 2403444, at *4

The facts of *Dubin* drive home this point. In *Dubin*, it was impossible to overbill without having a specific code that was the patient's Medicaid reimbursement number. Entering the code accessed the part of the Medicaid computer that made the reimbursement go through, akin to accessing the patient's account on the Medicaid computer.  Entering that means of identification was merely

"an ancillary feature of the billing method employed," however, *id*. at 132, as it merely set up the crime that followed.  Rather, the crux of the crime was what followed after the entry: "[t]he crux of the healthcare fraud was a misrepresentation about the qualifications of petitioner's employee," which tricked the Medicaid computer into paying more than was correct.  *Id*.

The means of identification covered in Counts 11-20 serve the same role as the Medicaid reimbursement number served in *Dubin*. Entering identity information removed a barrier to the crime occurring.  But the crux of the crime is what happened after that, and what happened after that did not involve the means of identification. Unsatisfied with the existing computer trespass laws that usually lead to non-jail punishments, the government is trying to use the fact that computer hacking usually involves entering account names and passwords to bootstrap computer trespass into "aggravated identity theft."  This effort is directly contrary to the Supreme Court's decision in *Dubin* and necessitates dismissal of Counts 11-20.

Dismissal of Counts 11-20 is a remedy entirely consistent with Sixth Circuit precedent interpreting *Dubin*.  For example, in *United States v. O'Lear*, 90 F.4th 519 (6th Cir. 2024), the defendant engaged in a massive fraud scheme in which he faked the signatures of doctors and technicians to submit fraudulent reimbursement Medicare and Medicaid requests for fake X-ray procedures.  The Sixth Circuit rejected O'Lear's claim that faking the doctor and technician signatures was merely

ancillary to the fraud: "O'Lear used the identities of these professionals in a 'deceptive' way that went to the 'crux' of his scheme to bill for fictitious x-rays." *Id*. at 533.

*O'Lear's* reasoning is correct, and it contrasts plainly with the situation alleged here. O'Lear deceived government employees in charge of reviewing Medicare and Medicaid requests to process those payments, all based on a false claim that certain procedures had happened—a claim that was made believable only because the claim was purported to have been submitted by doctors and technicians who claimed to have performed the procedures. The fake signatures constituted the core of the fraud scheme: They were exactly what tricked the government into paying O'Lear. All of that is missing here. There is no alleged fraud or deception in Counts 11-20 at all. The login identifiers were just virtual keys used to unlock virtual doors. No one's identity was stolen. No fraud crime was made possible because of a particular person's claimed identity. Unlocking the virtual doors allowed a later virtual trespass. But the alleged crime is a computer trespass, not aggravated identity theft.

## IV.   THE CONGRESSIONAL DEBATE OVER PUNISHMENT FOR HACKING CRIMES AND THE DEPARTMENT OF JUSTICE'S MANUAL FOR PROSECUTING COMPUTER CRIMES CONFIRMS THAT COUNTS 11-20 SHOULD BE DISMISSED

Although *Dubin* provides the core justification for dismissing Counts 11-20, that conclusion is confirmed by the Congressional debates over sentencing for hacking crimes and the positions taken by the Justice Department's own manual regarding prosecuting computer crimes. That history shows that both Congress and the Department of Justice have always seen computer hacking under the CFAA and Aggravated Identity Theft under § 1028A as unrelated offenses. The current Justice Department's effort to pair these statutes to turbocharge punishments for hacking flies in the face of traditional understandings of criminal liability for hacking.

Congress has never considered the possibility that entering a username and password to enable access to another's account is itself aggravated identity theft. Consider the legislative debate when 18 U.S.C. § 1028A was enacted in 2004. As far as counsel are aware, the only mention of computer hacking in Congressional materials is a reference to "identity thieves [who] are obtaining individuals' personal information" by methods that include "hack[ing] into computers or steal[ing] paperwork likely to contain personal information." H. Rep. No. 108-528, 108th Cong., 2d Sess. at 4 (2004). In other words, Congress was aware that those committing identity theft might hack into computers in order to obtain identity

records that enabled identity theft.  At the same time, it was never considered that entering in login credentials to enable unauthorized access could **itself** be the identity theft.

Indeed, the possibility that computer trespass could even theoretically trigger aggravated identity theft appears to reflect a statutory quirk, if not just an error. Section 1028A requires a predicate felony crime, and to that end it includes a long list of fraud crimes in § 1028A(c) that can serve as predicate offenses. It makes sense that identity theft requires a predicate offense involving fraud, as the crime of identity theft is committing fraud using another person's identity. But the only reason computer trespass offenses under § 1030(a)(2) are even theoretically possible predicate felony offenses is the sheer coincidence that it falls in the "fraud and false pretenses" Chapter of Title 18.  *See* § 1028A(c)(4) (including offenses in that chapter).

Compare  § 1030(a)(2) to the otherwise-identical computer trespass statute in 18 U.S.C. § 2701(a), which specifically covers hacking into email accounts.  It creates a misdemeanor offense that punishes anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided or intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a).

Like § 1030(a)(2), this misdemeanor trespass crime can become a felony if one of several criteria are met, including if it is committed "in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any State." §2701(b)(1).  However, 18 U.S.C. § 2701(a) cannot be a § 1028A predicate felony offense because it was enacted alongside federal privacy laws and was therefore placed in Chapter 121.  Whereas, § 1030(a)(2) just happens to be surrounded by actual fraud offenses in Chapter 47, like the computer fraud crime of § 1030(a)(4), so it appears to have been swept up along with the rest of the CFAA and included as a theoretically possible predicate crime.

More recent legislative debates confirm Congress's understanding that a routine act of entering in a username and password could not be a predicate felony that triggers § 1028A.  A useful reference point is an oft-revisited legislative proposal, first proposed in 2011 but never enacted, that called for a new 18 U.S.C. § 1030A.  The proposed law, titled "Aggravated Damage to A Critical Infrastructure Computer," was directly modeled off § 1028A.   It was designed to do for CFAA crimes what § 1028A does for fraud crimes.  If enacted, the language would have stated:

> It shall be unlawful to, during and in relation to a felony violation of section 1030, intentionally cause or attempt to cause damage to a critical infrastructure computer, and such damage results in (or, in the case of an attempt, would, if completed have resulted in) the substantial impairment—(1) of the operation of the critical infrastructure

computer; or (2) of the critical infrastructure associated with the computer.

Senate Judiciary Report on the Personal Data Privacy and Security Act of 2011 at 36 (2011), available at https://www.congress.gov/112/crpt/srpt91/CRPT-112srpt91.pdf (hereinafter, 2011 Senate Report).   Violations of the proposed law would have resulted in a 3-year mandatory minimum sentence.  *See id*. at 33.

As was noted at the time, the proposed Aggravated Damage to A Critical Infrastructure statute was directly modeled on the Aggravated Identity Theft statute. *See* Congressional Research Service, Cybersecurity: Cyber Crime Protection Security Act (S. 2111, 112th Congress)—A Legal Analysis 5 (2013) (noting the similarities). Instead of requiring a predicate fraud crime, § 1030A used the predicate offense of "a felony violation of section 1030." 2011 Senate Report at 36.   The biggest difference between them is that § 1030A would have been much narrower than § 1028A in an important respect:  Beyond the predicate offense, § 1030A would have required a quite severe kind of harm—substantial impairment to a critical infrastructure computer such as "electrical power grids, water supply systems and nuclear power plants." 2011 Senate Report at 33. Beyond this difference, the parallels are obvious.

In 2011 testimony before the Senate Judiciary Committee, the Justice Department's representative lauded the proposed § 1030A and its harsh proposed mandatory minimum sentences:

> The Administration believes that a mandatory minimum sentence of three years imprisonment in addition to any other appropriate penalty provided for by existing criminal statutes will not only appropriately punish offenders, but also more effectively deter others who would engage in such misconduct that puts public safety and national security at risk. The message needs to be sent loud and clear to criminals and other malicious actors that any attempt to damage a vital national resource will result in serious consequences.

Statement of Associate Deputy Attorney General James Baker, Cybercrime: Updating the Computer Fraud and Abuse Act to Protect Cyberspace and Combat Emerging Threats, Hearing Before the Senate Comm. on the Judiciary, 112th Cong., 1st sess. (2011) at 7, available at https://www.justice.gov/file/235556/dl?inline.

Section 1030A was never enacted into law, however.  As the 2011 Senate Report explained, "[t]he mandatory minimum sentence drew bipartisan opposition from several Judiciary Committee members during the Committee's consideration of the provision. In particular, Chairman Leahy expressed concern that the mandatory minimum sentence would lead to unfair sentencing results, while not adding any deterrence value." 2011 Senate Report at 8-9.  The bill never passed. As recently as 2021, members of the U.S. Senate have continued to propose adoption of an Aggravated Hacking bill, a proposed 18 U.S.C. § 1030A, which offer very slight variations on the proposed 2011 bill.  *See, e.g.*, 167 Cong. Rec. S5960-01 (August 5, 2021) (introduced by Senator Whitehouse) (proposing amendment that would add the provision).  Again, though, these proposals have never been enacted.

Crucially, however, **it never occurred to anyone in Congress** that the Aggravated Identity Theft statute already covered most of the ground that the proposed law would have covered.  The aggravated hacking statute would have imposed harsh mandatory minimum punishments for a narrow class of cases, and it was rejected on the basis of its mandatory minimum punishments.  Under the government's theory of Counts 11-20, however, § 1028A already imposes that harsh punishment—in a vastly greater number of cases, irrespective of damage, harm, or loss—and no one in Congress ever noticed and no one at DOJ ever bothered to mention it.  That is completely illogical.  It was never mentioned because it has never been understood to be the law.

The Justice Department's own published computer crime manual confirms this point.  *See* U.S. Department of Justice, Computer Crime and Intellectual Property Section, Prosecuting Computer Crimes at 4, 16-23, 89-96 (2nd ed. 2010) (available online at https://www.justice.gov/criminal/file/442156/dl) (hereinafter "Prosecuting Computer Crimes").  DOJ's manual was published by the Computer Crime and Intellectual Property Section at the Justice Department in 2010.  *See Prosecuting Computer Crimes, supra*, at v.  The manual comprehensively "examines the federal laws that relate to computer crimes," focusing on "computer intrusions, denial of service attacks, viruses, and worms."  *Id*.  Unsurprisingly, most of the manual is about CFAA, including 57 pages on the CFAA's statutory elements, *see*

*id*. at 1-57; 12 pages on § 1030-specific sentencing parts of § 2B1.1, *see id*. at 131-42; and 18 pages of § 1030 jury instructions, *see id*. at 151-68.

The coverage of § 1028A in *Prosecuting Computer Crimes* is at most an afterthought.  The entire discussion spans a perfunctory 2 pages. *See id*. at 100-02. The only reference in the manual for how § 1028A might relate to computer hacking, suggested once in that 2-page snippet, is that hackers might break into computers to obtain means of identification that enable later acts of identity theft.  *See id*. at 100 (stating that "defendants who engage in hacking activity in violation of section 1030 and obtain identity or account information" may also violate § 1028A).  Of course, this is exactly the fact pattern discussed in the 2004 House Report: Not that hacking itself could be identity theft, but rather that a hacker could break in to get records that facilitate future acts of identity theft. *See* H. Rep. No. 108-528, 108th Cong., 2d Sess. at 4 (2004) (noting that "identity thieves [who] are obtaining individuals' personal information" could "hack into computers or steal paperwork likely to contain personal information").

Views expressed in a DOJ manual are of course not binding law.  At the same time, the failure of DOJ's manual to recognize anything like the theory underlying Counts 11-20 is no accident, just like the failure of anyone in Congress to realize that there was already a harsh mandatory minimum for hacking is no accident.  The theory underlying Counts 11-20 is inconsistent with every prior understanding of the

23

law of computer crimes. Section 1028A simply does not allow the bootstrapping that makes an act of unauthorized access itself also aggravated identity theft.   Hacking is hacking, not identity theft.  Congress has never thought otherwise.  DOJ has not thought otherwise.  And now, after *Dubin*, the Supreme Court explains that this Court should not think otherwise.

For all of these reasons, and any other the Court deems appropriate, Matthew Weiss respectfully requests that this Court grant this Motion and dismiss Counts 11-20 of the indictment.

Respectfully submitted,


/s/ David Benowitz
David Benowitz
Paulette Pagan
Price Benowitz LLP
409 7th Street, NW
Suite 300
(202) 271-5249
David@PriceBenowitz.com
Paulette@PriceBenowitz.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of October 2025, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Timothy Wyse at the United States Attorney's Office.

/s/ David Benowitz
David Benowitz
Price Benowitz LLP
409 7th Street, NW
Suite 300
Washington, DC 20004
(202) 271-5249
David@PriceBenowitz.com

*Counsel for Matthew Weiss*

25