UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

vs.

                                      Criminal No. 25-cr-20165

                                      Hon. Nancy G. Edmunds

Matthew Weiss

      Defendant.

_____/

**Opposition to Defendant's Motion to Dismiss (ECF No. 20)**

Defendant Matthew Weiss is asking the Court to dismiss Counts 11- 20 of the indictment against him, each of which allege Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). His motion should be denied.

The indictment alleges that, between 2015 and 2023, Matthew Weiss gained unauthorized access to the social media, email, and/or cloud storage accounts of more than 3,300 people. The allegations are that Weiss primarily targeted female college athletes based on their school affiliation, athletic history, and physical characteristics—and that his goal was to obtain private photographs and videos never intended to be shared beyond intimate partners. It is alleged that Weiss facilitated these crimes by using passwords that were cracked, stolen, or reset without victims' authorization.

The indictment fairly informs Weiss of the charges against him, and it alleges facts that establish violations of 18 U.S.C. §§ 1030 and 1028A(a)(1). The defense's reliance on *Dubin v. United States*, 599 U.S. 110 (2023), is misplaced. Without the use of victims' means of identification during and in relation to the alleged unauthorized access, the objects of the scheme—intimate photos and videos—could never have been obtained. The use of usernames and passwords was therefore at the crux of the alleged offense, which satisfies the standard announced in *Dubin*.

## I.    Summary

Contrary to the claims of the defense, charging Weiss with aggravated identity theft is neither "novel" nor an "overreach." (ECF No. 20, PageID.58.) The plain language of 18 U.S.C. § 1028A(a)(1) applies to the facts alleged in the indictment—and its application to those facts is consistent with both prior convictions and relevant case law, including *Dubin v. United States*, 599 U.S. 110 (2023).

The defense further claims, if 18 U.S.C. § 1028A(a)(1) is applied to the facts alleged in the indictment, that the statute would apply to "generic" violations of 18 U.S.C. § 1030. (ECF No. 20, PageID.69.) Numerous fact patterns, and prior convictions, demonstrate that this is inaccurate; cybercriminals use many techniques that violate 18 U.S.C. § 1030 without triggering 18 U.S.C. § 1028A(a)(1).

The defense also mischaracterizes the nature of the allegations in the indictment, distancing them from the plain meaning of identity theft and sanitizing

2

facts that make the alleged conduct so insidious. Matthew Weiss did not pick up a key and unlock a door. According to the indictment, he stole his victim's identities to access the most intimate spaces in modern life—digital archives of private photos, videos, and correspondence. The indictment alleges that he engaged in a persistent, aggressive campaign to steal, crack, or reset the passwords of thousands of victims. He then allegedly used those passwords—along with the corresponding usernames—to represent to social media, email, and cloud storage providers that he was not Matthew Weiss but the authorized user of his victims' accounts.

## II. Weiss does not meet the high legal standard for dismissing an indictment

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecution for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000); *United States v. Monus*, 128 F.3d 376, 388 (6th Cir. 1997).

To be legally sufficient, an indictment "must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) (*citing Fleisher v. United States*, 302 U.S. 218 (1937)). Courts evaluating motions to dismiss do not evaluate the evidence upon

which the indictment is based. *See Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Powell*, 823 F.2d 996, 999-1001 (6th Cir. 1987).

The indictment against Matthew Weiss fulfills the constitutional requirements. It describes the crimes that Weiss is alleged to have committed, along with when and how he is alleged to have committed them. The statutory language is cited in each count, and facts are alleged that—if proven—meet the charged statutes' elements.

### III. Statutory language and case law support application of 18 U.S.C. § 1028A(a)(1) to the facts alleged in the indictment

Section 1028A(a)(1) provides an additional term of imprisonment of two years for anyone who "during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." Subsection (c) enumerates a limited set of violations to which the statute applies, including "any provision contained in this chapter [Chapter 47 of 18 U.S.C.] (relating to fraud and false statements), other than this section or section 1028(a)(7)." This includes unauthorized computer access in violation of 18 U.S.C. § 1030.

The defense does not dispute that the facts alleged in the indictment constitute felony violations of 18 U.S.C. §§ 1030(a)(2)(c) and (c)(2)(B)(ii). Nor do they dispute that a username and password constitute "a means of identification," *United States v. Barrington*, 648 F.3d 1178, 1193 (11th Cir. 2011) (holding that usernames and

4

passwords of university employees were "means of identification"), or that the indictment alleges that Weiss knew that the relevant means of identification did, in fact, belong to others. *C.f. Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009) (holding that to convict a defendant of 18 U.S.C. § 1028A(a)(1), the government must prove that the defendant knew that a means of identification did, in fact, belong to another).

The defense's primary argument is an attempt to overextend *Dubin v. United States*, 599 U.S. 110 (2023). The defense claims, when a criminal accesses an online account using a victim's username along with a stolen, cracked, or reset password, that they are not "using" that victim's means of identification to commit the crime. This is contrary to both *Dubin* and Sixth Circuit case law.

### A. The court should reject the defense's attempt to extend *Dubin*

David Dubin overbilled Medicaid, a fact pattern far from the indictment's allegations against Matthew Weiss. *Id.* at 114. Dubin's victim was the government, and the means of identification involved were the names of patients who received medical services. *Id.* The lie facilitating the overbilling had nothing to do with the patients; Dubin overstated the qualification of the provider, which inflated the reimbursement. *Id.*

5

### 1. Use of usernames and passwords is at the crux of the alleged crimes

The Supreme Court held that Dubin's crimes did not violate 18 U.S.C. § 1028A(a)(1) because, considering the framework of the statute, Dubin did not "use" patients' identities "in relation to" his criminal conduct. *Id.* at 131. The Court held that "[a] defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." *Id.* Dubin's scheme did not clear the bar because his scheme did not hinge on either the patients involved or any false representation concerning them. Rather, the crux was mispresenting the healthcare provider's qualifications. *Id.* at 132.

The allegations against Weiss meet the standard announced in *Dubin*. The indictment alleges that Weiss stole, cracked, or reset the passwords of specifically targeted victims—and then used them to masquerade as those same victims to gain access to their accounts. Unlike in *Dubin*, the alleged victims whose means of identification trigger 18 U.S.C. § 1028A(a)(1) are also the alleged victims of the underlying violations of 18 U.S.C. § 1030.

Using the usernames and passwords of targeted victims to access to their accounts—and their personal images—is the heart of the alleged violations of 18 U.S.C. § 1030. In *Dubin*, the means of identification were fungible; they were disassociated from both the deception involved (the health care provider's qualifications) and the goal of the scheme (reimbursement). But the indictment's

allegations against Weiss link purposely chosen victims—and therefore their individual means of identification—to the goals of the alleged criminal conduct: a *specific* victim's username and password was necessary to access *that victim's* account and thereby *that victims'* personal images. Each victim's means of identification is at the crux of each corresponding count of 18 U.S.C. § 1028A(a)(1).

### 2. The alleged use of usernames and passwords is deceptive

*Dubin* also holds that "with fraud or deceit crimes . . . the means of identification specifically must be used in a manner that is fraudulent or deceptive." *Id.* at 131-132. So it was here. Online service providers were deceived as to who was accessing victims' accounts. To gain unauthorized access, it was necessary for someone (alleged by the indictment to be Weiss) to represent that they—not the authorized user of the account—was seeking access. The username and password combination—i.e. the means of identification—was the means of that deception.

It is untenable to claim, as the defense does, that no deception has been alleged merely because the relevant means of identification were presented to a computer instead of a human. (ECF No. 20, PageID.67.) Digital gateways can be deceived just as well as a human at a checkpoint, and the transportation and commerce of modern life involve frequent digital identity checks.

Nothing in the statutory language, case law, or jury instructions connected to 18 U.S.C. § 1028A(a)(1) requires that a means of identification be presented to a

human as opposed to a digital gateway. The conspirators in *Barrington* changed grades in a university computer system without interacting with a human. *United States v. Barrington*, 648 F.3d 1178, 1184 (11th Cir. 2011). Fraudulent medical billing cases sustaining convictions under 18 U.S.C. § 1028A(a)(1) have not found it necessary to determine whether reimbursements were automated or if there was a "human in the loop." *See, e.g.*, *United States v. Michael*, 882 F.3d 624 (6th Cir. 2018); *United States v. O'Lear*, 90 F.4th 519 (6th Cir. 2024).

The defense theory adds a nonexistent element to the crime. It also precludes common, long accepted applications of 18 U.S.C. § 1028A(a)(1)—not only application to the fraudulent billing scenarios just described, but to fraudulent electronic bank transfers, public benefits obtained in the name of another using a government website, fraudulent use of debit cards at an ATM, or fraudulent use of credit cards online. *See, e.g.*, *United States v. Fike*, 140 F.4th 351, 354-55 (6th Cir. 2025) (financial information and means of identification used to pay personal credit card bills and purchase items from online retailers); *United States v. Tellez*, 86 F.4th 1148, 1150 (6th Cir. 2023) (involving altered gift cards containing stolen credit card information); *United States v. Mastan*, No. 20-1653, 2022 WL 43193 at *1(6th Cir. January 5, 2022) (use of ATM skimming devices and the corresponding use of stolen information).

### B. Application of 18 U.S.C. § 1028A(a)(1) to the facts alleged in the indictment is consistent with the relevant Sixth Circuit case law

Sixth Circuit case law—both pre- and post-*Dubin*—support that the facts alleged in the indictment satisfy the elements of 18 U.S.C. § 1028A(a)(1).

*United States v. Michael*, 882 F.3d 624 (6th Cir. 2018), is the definitive Sixth Circuit case concerning the limits of 18 U.S.C. § 1028A(a)(1).[1] Philip Michael used the identity of a doctor and a patient "to request reimbursement for a drug the doctor never prescribed and the patient never requested." *Id.* at 625. The Sixth Circuit held that those facts supported a charge of 18 U.S.C. § 1028A(a)(1), reversing a district court dismissal. *Id.* at 629. The "salient point" was "whether the defendant used the means of identification to further or facilitate [the charged crime]." *Id.* at 628. The indictment sufficiently alleged that Michael did because the allegations "connected the means of identification to facilitation" of the underlying crime. *Id.* at 629.

The allegations against Weiss map directly on to the Sixth Circuit's analysis in *Michael*. The means of identification at issue—victims' usernames and passwords—are "connected" to the "facilitation" of the alleged violations of 18 U.S.C. § 1030 because the use of each means of identity is linked to the access of the corresponding victim's account and the theft of their digital images.

---

[1] *Michael* was cited approvingly by the Supreme Court in *Dubin*. *See* 599 U.S. at 117-118, 132.

Post-*Dubin*, the Sixth Circuit issued another ruling on 18 U.S.C. § 1028A(a)(1), *United States v. O'Lear*, 90 F.4th 519 (6th Cir. 2024). This decision further solidifies the Circuit's precedent supporting application of 18 U.S.C. § 1028A(a)(1) to the facts alleged in the indictment.

Thomas O'Lear used identities of nursing home residents to bill Medicare and Medicaid for x-ray services that were never provided. *Id.* at 522. He also forged signatures of health care professionals to frustrate an audit. *Id.* The Sixth Circuit's ruling focused on O'Lear's use of the health care professionals' names and signatures "to make it appear as if these individuals had ordered or conducted the x-rays he billed for." *Id.* at 533. Because O'Lear deceptively used these names and signatures to facilitate the object of his crime—reimbursement—their use went to the "crux" of the offense and his conviction was upheld. *Id.*

Once again, the indictment's allegations map directly on to the Sixth Circuit's precedent. Account access—and thereby the content therein—was the *raison d'être* of the alleged crimes, whereas reimbursement was that of O'Lear's crimes. O'Lear needed to misrepresent names and signatures of healthcare providers to justify reimbursement. Weiss, allegedly, needed to misrepresent usernames and passwords to gain access to victims' accounts. As Medicare and Medicaid would not knowingly approve reimbursements justified with forged signatures, internet service providers

10

would not knowingly approve account access justified by usernames and passwords used without authorization.

## IV. Prior Convictions under 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 1030 support the government's interpretation of those statutes

The defense makes two unsupported assertions concerning the application of 18 U.S.C. § 1028A(a)(1) to violations of 18 U.S.C. § 1030. First, they claim that linking 18 U.S.C. § 1028A(a)(1) to 18 U.S.C. § 1030 is novel. (ECF No. 20, PageID.58.) It is not.

Second, they claim that the indictment "collapses the enhancement into the enhanced" by necessitating a reading of 18 U.S.C. § 1028A(a)(1) that would apply to "generic" violations of 18 U.S.C. § 1030 and allow "routine acts of hacking" to be "double counted." (ECF No. 20, PageID.62, 68-69.) This is inaccurate. There are numerous ways that criminals can—and have—violated 18 U.S.C. § 1030 without implicating 18 U.S.C. § 1028A(a)(1).

### A. Prior convictions have been obtained in cases linking 18 U.S.C. § 1028A(a)(1) to 18 U.S.C. § 1030

The application of 18 U.S.C. § 1028A(a)(1) to violations of 18 U.S.C. § 1030 is not novel. In 2011, the Eleventh Circuit upheld the trial conviction of Marcus Barrington for aggravated identity theft connected to a scheme in which usernames and passwords of university employees were used to change students' grades. *United States v. Barrington*, 648 F.3d 1178, 1192-93 (11th Cir. 2011). More recent

judgements in cases where convictions under 18 U.S.C. § 1028A(a)(1) were linked to 18 U.S.C. § 1030 include:

- *United States v. Christopher Brannan*, 18-cr-118, (E.D. Va., March 5, 2019)
- *United States v. Yevgeniy Aleksandrovich Nikulin*, 16-cr-440, (N.D. Ca. October 5, 2020)
- *United States v. Nicholas Faber*, 21-cr-21, (N.D. N.Y., August 19, 2021)
- *United States v. Michael P. Fish*, 20-cr-117, (N.D. N.Y., May 23, 2022)
- *United States v. Jesse E. Kipf*, 23-cr-60, (E.D. Ky., August 20, 2024)
- *United States v. Chad Henry Davis*, 24-cr-218, (N.D. Ok., October 14, 2025)
- *United States v. Matthew D. Lane*, 25-cr-40015, (D. Mass., October 14, 2025)

These cases span years, administrations, and circuits—refuting the defense claim that charging Matthew Weiss with aggravated identity theft is an unprecedented decision made by the "current" Department of Justice. (ECF No. 20, PageID.74.) These cases also both pre- and post-date the 2023 *Dubin* decision, precluding any counterargument that this case changed the legal landscape.

Most instructive among these cases is the first listed, *United States v. Brannan*. Christopher Brannan "fraudulently obtained usernames and passwords to access the victims' email accounts, search the content of the victims' email accounts, and obtain personal information such as sensitive and private photographs and videos, including nude photographs." *Brannan*, Statement of Facts, 18-cr-118, (E.D.

Va., October 22, 2018). The quoted passage mirrors the allegations in the indictment against Matthew Weiss, definitively shutting down the argument that the government is pursuing "an untested theory." (ECF No. 20, PageID.56.)

### B. 18 U.S.C. § 1030 violations involve more than just username and password compromises

Cybercriminals use numerous techniques to obtain unauthorized access to computer networks that would not trigger 18 U.S.C. § 1028A(a)(1). Software programs are vulnerable to zero-day exploits. Spam email campaigns can trick recipients into opening attachments containing malware. Fraudulent pop-up ads can entice internet users into clicking on fraudulent links. These and other avenues of compromise do not inherently involve the illicit use of means of identification.

Indictments describing violations of 18 U.S.C. § 1030 that would not implicate 18 U.S.C. § 1028A(a)(1) include *United States v. Larry Patterson*, 14-cr-00345, (D. Mass., June 17, 2014) (use of SQL injection and cross-site scripting attacks); *United States v. Taylor Huddleson*, 17-cr-00034, (E.D. Va., February 16, 2017) (distribution of Remote Access Trojans (RATs)); and *United States v. Rim Jong Hyok*, 24-cr-20061, (D. Kan., July 24, 2024) (deployment of ransomware).

While not triggered by every violation of 18 U.S.C. § 1030, 18 U.S.C. § 1028A(a)(1) provides for an additional penalty whenever it is. Congress made the determination that using the means of identification of another to commit the crime is deserving of enhanced punishment. This is not double counting; this is enforcing

13

the statutory scheme as it is written. The defense may believe that using stolen, cracked, or reset passwords to illegally access online accounts is "routine." (ECF No. 20, PageID.62.) Congress does not.

V.   **The defense's interpretation of secondary sources is unpersuasive, and their arguments are contrary to the plain meaning of aggravated identity theft**

The defense cites the legislative history of 18 U.S.C. § 1028A(a)(1), a repealed sentencing provision, the failed passage of bills that would have enhanced penalties for certain cybercrimes, and a Department of Justice manual. But instead of identifying direct support for their arguments within those sources, the defense tries to fashion implicit support from a lack of relevant discussion.

This itself is inadequate. In addition, their associated arguments run counter to the plain meaning of the statute. Throughout the section of its brief dealing with legislative history, and elsewhere, the defense makes arguments that are contrary— not only to the caselaw described above—but to the plain meaning of the phrase "aggravated identity theft."

## A. The court should reject the defense's arguments connected to secondary sources

The defense remarks that "this case should proceed as congress intended." (ECF No. 20, PageID.64.) The government agrees. As described above, the intent of Congress is clear from the language of the statute. None of the key cases—*Dubin*,

*Michael*, *O'Lear*—contain any significant legislative history analysis.[2] This is to be expected; the language of the statute speaks for itself.

When the elements are met—as they are alleged to have been by the indictment—18 U.S.C. § 1028A(a)(1) applies to 18 U.S.C. § 1030 because it falls within 18 U.S.C. § 1028A(c)'s enumeration. This is not a "statutory quirk" (ECF No. 20, PageID.75); it is how Congress defined the crime's scope. Removing an entire statutory provision from the ambit of 18 U.S.C. § 1028A(a)(1), as the defense seeks, would be monumental. It is difficult to imagine that any legislative history could carry such a heavy load. Certainly, what the defense cites cannot.

The cited portions of the legislative debate concerning 18 U.S.C. § 1028A do not shed light on how Congress would view the facts alleged in the indictment. Nor are the repeal of a six-month mandatory minimum penalty in 2001 or the failed enactment of a non-applicable[3] three-year mandatory minimum in 2011 enlightening. What was in the collective mind of Congress in 2001 or 2011 is irrelevant to interpreting the 2004 passage of 18 U.S.C. § 1028A.

The cited Department of Justice manual is likewise not germane. Reoccurring throughout the defense's discussion of secondary sources is an unsupportable

---

[2] *Dubin* mentions "legislative history" only once, in the decision's footnote 7. The term "legislative history" does not even appear in *Michael* or *O'Lear*.

[3] The 2011 proposed 18 U.S.C. § 1030A, which dealt with damage to critical infrastructure, would not even apply to the facts alleged in the indictment.

inference: that because Congress and the Department of Justice were concerned that computer intrusions can *obtain* stolen identities, that this somehow precludes enhanced punishment for computer intrusions accomplished *with* stolen identities. No evidence is presented that either Congress or the DOJ would support this leap. The elements of a crime are determined by the statutory language; they cannot be negated by commentary concerning one specified harm.

### B. The indictment alleges aggravated identity theft in the common understanding of those terms

Presenting a username and password combination to a social media site or an email provider is a declaration that you are who you say you are—i.e. the authorized account holder. It is not the same as turning a physical key, which is a mechanical device decoupled from a specific individual. Usernames and passwords are how individuals authenticate themselves to access the most intimate spaces of their modern, digital lives—the exact spaces that Matthew Weiss allegedly sought access.

The Supreme Court contrasted the common meaning of "identity theft" with the facts alleged against David Dubin. It found an insufficient connection because Dubin's deception was disassociated from the identities of the patients used to support his fraudulent billing. *Dubin*, 599 U.S. at 115, 120-124. Matthew Weiss is accused of something far different. With electronic communication ascendent, gaining access to social media or email accounts by masquerading as the authorized user is "identity theft" in the ordinary meaning of that term. Using a victim's

username and password to illegally access their digital personal spaces allows not only the perusing and downloading of the intimate images that Weiss allegedly sought. It also grants access to a victim's entire online life—including contacts, personal correspondence, purchases, and location history.

Contrasting the facts alleged in the indictment with the facts of *O'Lear* is also illustrative. Thomas O'Lear, although his victim was the government, used the signatures of medical professionals to support his false billing. *United States v. O'Lear*, 90 F.4th 519 (6th Cir. 2024). Post-*Dubin*, The Sixth Circuit held that this violated 18 U.S.C. § 1028A(a)(1)—even though the medical professionals were not O'Lear's victims. *Id.* Simply using a signature of another to support billing a third party is therefore sufficient to constitute identity theft. Weiss is alleged to have gone beyond that: assuming his victims' identities to enter the digital archives of their personal lives.

Beneath the surface of the defense brief appears to be the implied argument that Weiss's alleged conduct is not aggravating. The brief makes frequent use of such terms as "garden variety" (ECF No. 20, PageID.64, 65, 68), "generic" (ECF No. 20, PageID.68, 69), and "routine" (ECF No. 20, PageID.56, 62, 76). It remarks that "absent a showing of high dollar loss," the sentencing recommendation in computer intrusion cases "tends to be probation." (ECF No. 20, PageID.62-62.)

17

This implied argument ignores that the only relevant definition of "aggravating" is Congress's. But it also runs contrary to the plain meaning of the term when applied to the allegations in the indictment, and it wrongly suggests that financial loss is the sole measure of severity. The victims listed in the indictment did not lose money to fraudulent bank transfers, nor were their identities used by another to receive benefits. But it is alleged that Matthew Weiss intruded upon their private, digital spaces to view their correspondence and download images that they intended to be viewed only by themselves and their intimate partners. This alleged privacy violation is intense and personal. It is, in every sense of the word, aggravating.

## VI.     Conclusion

For the reasons stated herein, defendant's motion should be denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*/s/ Timothy J. Wyse*
Timothy J. Wyse
Assistant U.S. Attorney
211 West Fort, Suite 2001
Detroit, Michigan 48226

November 18, 2025

## **Certificate of Service**

I certify that on November 18, 2025, I electronically filed this motion response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send to counsel of record.

s/Timothy J. Wyse
Assistant United States Attorney
