UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

vs.

Matthew Weiss

       Defendant.

_____/

Criminal No. 25-cr-20165

Hon. David M. Lawson

**Opposition to Defendant's Omnibus Motion to Dismiss (ECF No. 30)**

Matthew Weiss seeks dismissal of various counts of the indictment against him, claiming defects linked to duplicity, multiplicity and venue. His motion should be denied.

Weiss's purely legal challenges based on duplicity or multiplicity do not articulate cognizable grounds for dismissal, and the factual concerns that he raises—if validated by evidence introduced at trial—could be addressed via jury instructions.

Weiss's venue concerns are not suitable for adjudication on a motion to dismiss because no defect in venue is apparent on the face of the indictment. They are also meritless—the government intends to prove at trial that Weiss committed relevant acts connected to each alleged count while living and working in the Eastern District of Michigan.

1

I.      **Background**

  A. **The legal standard for evaluating an indictment**

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecution for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000); *United States v. Monus*, 128 F.3d 376, 388 (6th Cir. 1997).

To be legally sufficient, an indictment "must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992) (citing *Fleisher v. United States*, 302 U.S. 218 (1937)).

Weiss neglects a core tenet of the relevant law: courts adjudicating motions to dismiss do not evaluate evidence upon which the indictment is based. *See Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Powell*, 823 F.2d 996, 999-1001 (6th Cir. 1987). His brief—particularly in challenging venue—raises factual disputes, either explicitly or implicitly. For context only, the government will provide background herein on these disputes. But trial—not a motion to dismiss—is the proper time and place for resolving them.

## B. The indictment against Matthew Weiss

The indictment against Weiss, ECF No. 1, was filed on March 20, 2025, and charges Weiss with violations of 18 U.S.C. § 1030(a)(2)(c) and (c)(2)(B)(ii) (unauthorized access) and 18 U.S.C. § 1028A(a)(1) (aggravated identity theft).

Counts 1-10 charge Weiss with unauthorized access linked to ten individual victims, identified as Jane Does #1 through #10. Counts 11-20 charge him with aggravated identity theft linked to those same ten victims. Weiss previously filed a motion to dismiss Counts 11-20; that motion was denied. (ECF No. 34.)

Counts 21-24 charge Weiss with unauthorized access linked to four institutional victims: Keffer Development Services (Count 21), Technology Provider #1 (Count 22), the University of Michigan (Count 23), and Westmont College (Count 24). These counts are charged as courses of conduct; each identifies a defined date range, and a corresponding approximate number of intrusions linked to each institutional victim.

The alleged courses of conduct involving two of the four institutional victims are connected to several of the individual victims. In the case of Technology Provider #1, Count 22 alleges that Weiss accessed that company's servers without authorization to access the private data of more than forty customers. Those forty-plus customers include Jane Does 2, 7, 8, 9, and 10 (the alleged victims of unauthorized access Counts 2, 7, 8, 9, and 10). Count 23 alleges that, without

3

authorization, Weiss accessed servers of the University of Michigan and its email provider to access the private data of more than twenty-five alumni, including Jane Doe #4 (the alleged victim of unauthorized access Count 4).

Weiss has been provided with discovery in excess of 60,000 pages documenting the government's case against him, including documentation of specific intrusions.

## II. Weiss's duplicity challenge fails as a matter of law, and—even if successful—it would not be grounds for dismissal because the alleged defects could be curried via a jury instruction

A duplicitous count of an indictment inappropriately combines separate offenses. *United States v. Duncan*, 850 F.2d 1104, 1108 n. 4 (6th Cir. 1988)). Duplicity violates a defendant's Sixth Amendment rights by creating the potential for coalitions within a jury to arrive at a so-called "patchwork verdict" without the jury unanimously finding the defendant guilty of a single crime. *See Duncan*, 850 F.2d at 1108-1009. *See also United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2008); *United States v. Washington*, 127 F.3d 510, 512-13 (6th Cir. 1997). Duplicity may also "potentially prejudice a defendant in sentencing, obtaining appellate review, and protecting himself against double jeopardy." *Id.* at 513 (citing *Duncan*).

The term "separate offenses" is a term of art. A single count of an indictment "does not suffer from duplicity where only one offense is alleged even if several different acts are specified." *United States v. Zeidman*, 540 F.3d 314, 316 (7th Cir.

1976). The "doctrine of duplicity . . . allows the charging of multiple means constituting a single and continuing offense, even if the components of that single offense may otherwise be treated as separate offenses." *United States v. Kearny*, 451 F. Supp 33, 36 (S.D. N.Y. 1978). Depending on the nature of the alleged conduct, "several separate transactions may form a continuing scheme, and may therefore be charged in a single count." *United States v. Daley*, 454 F.2d 505, 509 (7th Cir. 1972) (holding that multiple acts of embezzlement could be amalgamated into a single count without being duplicitous). *See also United States v. Pavloski*, 574 F.2d 933, 936 (7th Cir. 1978) (observing that Rule 7(c) of the Federal Rules of Criminal Procedure (governing indictments) "necessarily contemplates that two or more acts, each one of which constitute an offense standing alone, may be joined in a single count" and may not be duplicitous if "the offenses joined bear a relationship to one another and may be said to constitute a continuing course of conduct").

Duplicity is "not fatal to an indictment but may be cured by reformulation." *Duncan*, 820 F.2d at 1108 n. 4. Typically, this cure is achieved by a jury instruction. *See, e.g.*, *United States v. Williams*, 998 F.3d 716, 735 (6th Cir. 2021); *Kakos*, 483 F.3d at 444-445; *United States v. Blandford*, 33 F.3d 685, 699 (6th Cir. 1994).

    **A. Counts 21 through 24 of the indictment each charge a course of conduct and are not duplicitous**

Weiss argues that Counts 21 through 24 of the indictment, which charge him with unauthorized access to servers of institutional victims, are duplicitous because

5

each allege multiple intrusions. But, in each of these counts, the government has—as it is entitled to do—charged Weiss with a single offense consisting of a course of conduct linked to a single victim over a defined and continuous period.

### 1. Unauthorized Access can be charged as a course of conduct

For the government to charge a single count as a course of conduct, the statute must not prohibit it. *See, e.g.*, *United States v. Kearny*, 451 F. Supp 33, 36 (S.D. N.Y. 1978). But aggregating more than one act into a course of conduct should be permitted unless there is evidence that Congress intended to prohibit a unified scheme. *See United States v. Moloney*, 287 F.3d 236, 240 (2nd Cir. 2002) (abrogated on other grounds) (overserving that application of the doctrine of duplicity in situations where the government has properly charged a course of conduct "exalts form over substance").

18 U.S.C. Section 1030 contemplates that a single violation of unauthorized access can involve multiple computers—and therefore multiple intrusions. A court in the Northern District of Ohio has ruled that section 1030 permits charging a course of conduct. *United States v. Phillip R. Durachinsky*, Order, No. 18-cr-22, ECF No. 175, Page 7 of 26 (N.D. Oh., May 19, 2023) (finding no support for defendant's argument that Congress prohibited the government from charging violations of 18 U.S.C. § 1030(a)(3) as a course of conduct).

Further, as a judge in the Northern District of Georgia explained while considering a related question concerning damaging protected computers:

> The United States Code sets a default rule of statutory construction that Congress's use of the singular in a statute includes the plural. 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things[.]"). Nothing in the CFAA suggests Congress intended to foreclose the use of the plural when defining "computer" and "protected computer." Indeed, reading the CFAA in context, it is clear that the statute specifically contemplates charging a defendant with damaging multiple protected computers. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(VI) (providing for higher sentence where defendant damages "10 or more protected computers"). It does not say those computers must be charged in different counts.

*United States v. Vikas Singla*, *Opinion & Order*, 21-cr-228, ECF No. 98, Page 11 of 54 (N.D. Ga., September 12, 2023).

### 2. Counts 21-24 properly charge courses of conduct because each are linked to a single victim and a defined period

"The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution." *United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir. 1980). *See also United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) ("The line between multiple offenses and multiple means to the commission of a single offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecutor.").

In *Berardi*, the defendant was charged with a single count of obstruction of justice, which alleged three episodes in which he sought to influence the same

7

witness to testify falsely before a grand jury. *See id.* The Seventh Circuit explained that the choice to charge a course of conduct is a pragmatic one:

> it is no doubt true that the three acts of obstruction described in Count Seven could have been constituted separate violations of section 1503 and could have been charged in separate counts. Had the government taken this route, of course, Berardi would have been subjected to multiple statutory penalties. The government, however, declined this opportunity to cumulate these punishments and the indictment, fairly interpreted, charges Berardi with a continuing course of conduct, during a discrete period of time, to influence Heiden's grand jury testimony.

*Id.* at 898.

This parallels the government's choice in this case. Rather than charge Weiss with multiple counts per victim, the government elected to streamline the indictment by grouping multiple intrusions over a defined and continuous period into a course of conduct constituting a single offense, sacrificing the potential increased punishment in pursuit of economy. *See United States v. Kelly*, 396 F.2d 727, 730 (2nd Cir. 1968) (observing that charging an offense as a continuing course of conduct as opposed to multiple violations could be to a defendant's advantage); *Hanf v. United States*, 235 F.2d 710, 715 (8th Cir. 1956) ("Granting that the government might technically have broken this down into many separate individual offense, we do not see the necessity for doing so."); *Mellor v. United States*, 160 F.2s 757 (8th Cir. 1947) ("We have no doubt that the government properly might treat the entire

8

transaction as one joint offense . . . and should be commended, rather than criticized, for having done so.").

### 3. Counts 21-24 do not present a double jeopardy concern

Weiss's other concern linked to duplicity—double jeopardy—can be quickly brushed aside. A conviction on any of Counts 21-24 would prevent the government from charging him in the future with any unauthorized access offense against the designated victims during the defined date range. *Hanf*, 235 at 715 ("Certainly, any similar prosecution by the government against this appellant for a violation committed at any time between the dates indicated in Count 1 of the indictment would be a prosecution for the same offense, and would be promptly dismissed.") From a double jeopardy perspective, the government's decision to charge a course of conduct is therefore more favorable than the alternatives of either charging a single intrusion or selected intrusions as individual counts.

### B. The remedy for the alleged duplicity would be a curative jury instruction

Even were the Court to rule that Counts 21-24 are duplicitous, Weiss's remedy would be a curative jury instruction, not dismissal. *United States v. Steiner*, 847 F.3d 103, 114-115 (3rd Cir. 2017) ("When a defendant's Sixth Amendment right to unanimous jury verdict is jeopardized by a duplicitous indictment, a court can cure the indictment by issuing a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act.") *See also*, *United States v.*

9

*Rogers*, 44 F.4th 728, 738 7th Cir. 2002); *Williams*, 998 at 735; *Kakos*, 483 F.3d at 444-445; *Blandford*, 33 F.3d 685 at 699.

Whether to issue such an instruction, and the form of it, would be a decision for the Court at trial. *See, e.g.*, *Pavloski*, 574 F.2d at 936 (holding that a jury instruction on unanimity was not necessary when a defendant's trial defense precluded the possibility of "prejudice through lack of unanimity.") Weiss provides no authority that dismissal would be an appropriate remedy at this stage of the proceedings, before a trial and before any curative jury instructions could be considered and potentially given. *C.f. Duncan*, 850 F.2d at 1105 (dismissal was the remedy for duplicity—but only after appellate review identified that the trial judge erred by failing to provide a curative jury instruction, even in the face of a mid-deliberation jury instruction suggesting that was necessary).

### C. Applying the Sixth's Circuit's reasoning in *Alsobrook* demonstrates that the charges against Weiss are not duplicitous

The government's discretion to charge a course of conduct is not unlimited, but the reasoning in *Alsobrook* demonstrates that Counts 21 through 24 fall within the Sixth Circuit's established boundaries:

> In this case, we believe that the government's characterization of the facts as a single, continuous scheme was a fair one. Moreover, none of the dangers of duplicity were present in this case. The government's theory of prosecution was sufficiently clear to provide adequate notice of the charges against Alsobrook and to preclude any potential for double jeopardy. The indictment did not create any evidentiary problems as a result of the single count. Finally, the district court, by

10

> instructing the jury that it must reach a unanimous decision on at least one act of interstate travel, obviated any possibility of a conviction based on a less than unanimous verdict.

620 F.2d at 142-43.

In Counts 21-24, the government has made a reasoned, pragmatic decision to unify intrusions against defined victims over defined periods. There are no concerns with notice: the allegations against Weiss are clear and concise, and discovery has provided him with ample knowledge of the charges against him. The government's choice has not created any potential for evidentiary confusion. And—as explained above—double jeopardy is not an issue and any potential concerns with respect to unanimity could be addressed via a jury instruction.

### D. Weiss raises factual issues that are not relevant to a motion to dismiss

Without explaining how it is relevant to his duplicity challenge, Weiss protests that Counts 21-24 are flawed because they fail to identify the exact times, locations, and credentials involved, and in some cases state that the exact means of the alleged crimes are unknown. (ECF No. 30, PageID.149, 151.) But such specificity in an indictment is unnecessary. *See*, *e.g.*, *Pavloski*, 574 F.2d at 936 (observing, in the context of a duplicity challenge, that an indictment may allege that the means by which a defendant committed an offense were unknown).

Moreover, Weiss's defense team has been provided with ample discovery concerning the intrusions relevant to Counts 21-24. If Weiss wishes to challenge the government's proofs concerning these courses of conduct, he can do so at trial.

### III. Weiss has not successfully identified any counts of the indictment that should be merged, and any multiplicity concerns identified at trial could be cured by jury instructions

A multiplicitous indictment charges the exact same conduct via multiple counts. *See*, *e.g.*, *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008); *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 195). Multiplicity violates the double jeopardy clause of the Fifth Amendment by imposing multiple punishments for the same crime. *Swafford*, 512 F.3d at 844. Potential remedies include requiring the prosecution to "elect either the count or the charge within the count upon which it will rely" or a jury instruction "peculiarizing the distinct offense charged." *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). If charged counts overlap completely, merger of those counts is necessary to avoid a double jeopardy violation. *Swafford*, 512 F.3d at 845-46.

Typically, the question of multiplicity arises when a defendant claims that they have been charged with the same act via multiple statutes; this necessitates the so-called *Blockburger* analysis to determine whether the government will be required to prove at least one element in each of the challenged counts that is not present in the other. *See*, *e.g.*, *Swafford*, 512 F.3d at 845. Other multiplicity challenges involve assessing the minimum "unit of prosecution" of a crime. *See*, *e.g.*, *United States v. Al Safoo*, No. 18-696, 2025 WL 1331682, at *5-6 (N.D. Ill., May 7, 2025).

Weiss is making a different challenge. He claims that three of the four counts charging him with unauthorized access against institutional victims (Counts 21-23) factually overlap with earlier counts in the indictment charging him with unauthorized access against individual victims. At most, however, Weiss has identified a partial overlap that could be addressed via jury instructions.

Weiss's claim that Count 21 of the indictment is mutiplicitous is based on the indictment's incorporation of earlier paragraphs into subsequent charges. (ECF No. 30, PageID.155.) But this practice is common, to ensure that factual predicate allegations are not needlessly repeated, and it is expressly permitted by Federal Rule of Criminal Procedure 7(c)(1) ("A count may incorporate by reference an allegation made in another count"). Moreover, Weiss is not charged with accessing the Keffer Development Services account of any of the individual victims. (*See* ECF No1., PageID.5.) There is therefore no support for Count 21 being multiplicitous of any other count in the indictment.

With respects to Counts 22 and 23, Weiss has identified—partial—factual overlap with earlier counts in the indictment. Count 22 charges Weiss with unauthorized access of servers operated by Technology Provider #1 to access the private data of more than forty of its customers. Counts 2 and 7-10 charge Weiss with unauthorized access of the accounts of five of Technology Provider #1's customers. Count 23 charges Weiss with accessing, without authorization, servers

13

of the University of Michigan and its email provider in furtherance of resetting the passwords of more than forty email accounts and accessing more than twenty-five of those accounts. Count 4 charges Weiss with unauthorized access of an individual victim's University of Michigan email account.

Weiss has, however, not identified total overlap between any counts of the indictment. With respect to Count 22, setting aside the individual victims of Counts 2 and 7-10, the indictment still alleges a course of conduct affecting more than thirty-five customers of Technology Provider #1. With respect to Count 23, setting aside the individual victim of Count 4, the indictment still alleges a course of conduct involving the reset of more than thirty-nine University of Michigan email account passwords and the unauthorized access of more than twenty-four of those accounts.

Because Weiss has failed to identify a full factual overlap between any counts, no counts merge. *C.f. Swafford*, 512 F.3d at 845-46. Further consideration of his multiplicity argument is premature. Should facts introduced at trial suggest that the partial factual overlap involving Counts 22 and 23 present potential double jeopardy concerns, the Court could address them with an appropriate jury instruction. *See*, *e.g.*, *Robinson*, 651 F.2d at 1194.

## IV. Weiss's venue challenge is both premature and meritless

Defendants have the right to be tried in the district in which they are alleged to have committed their crimes. U.S. Const, art. III, § 2, cl. 3; U.S. Const., amend.

VI; Fed R. Crim. P. 18. The government is responsible for proving venue at trial, for each count, by a preponderance of the evidence. *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001).

Crimes "begun in one district and completed in another," may be "prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). The Sixth Circuit uses a "substantial contacts test" for assessing venue that considers factors including "the defendant's act, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate fact finding." *United States v. Brika*, 416 F.3d 514 (2005) (internal quotations and citations omitted). The location of witnesses and evidence is relevant to this test. *See United States v. Hagar*, 822 Fed.Appx 361, 370 (6th Cir. 2020).

Weiss alleges that venue is defective for Counts 1, 2, 6, 8, 9, 11, 12, 16, 19, 21, and 22 of the indictment.[1] The focus of his argument is the factual contention that none of these accounts, according to Weiss, "involve any servers in the Eastern District of Michigan . . . ."[2] (ECF No. 30, PageID.156.) But Weiss's challenge is both

---

[1] Why Weiss selected this subset of counts is not apparent from his brief. For example, despite his focus on the location of victimized servers, he has not challenged venue for Count 24—which alleges unauthorized access victimizing Westmont College, which is in California.

[2] Weiss also argues that it is relevant to his venue challenge that certain counts of the indictment do not allege specific times or locations, and that it is significant

premature and legally flawed. In addition, while a motion to dismiss is not the proper forum to resolve the factual disputes he raises, the government expects that evidence introduced at trial will prove that venue is proper for all counts.

The government acknowledges the responsibility to prove venue—at trial. *See e.g.*, *Crozier*, 259 F.3d at 519. While a venue deficiency could, theoretically, be identified on the face of an indictment, the Sixth Circuit has held that alleging that conduct took place in the district in which a defendant has been charged is sufficient. *See United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) (holding that where the indictment alleged that conduct took place "in the Northern District of Ohio" that "Any defect in venue was therefore not apparent from the indictment itself.") Each count of the indictment alleges that Weiss's actions took place in the "Eastern District of Michigan and elsewhere." (ECF No. 1, PageID.4, 6, 8, 9, 10, and 11.) At the motions phase, the indictment is therefore impervious to Weiss's venue challenge.

---

that certain technology providers from which he allegedly stole victims' data are identified by the indictment as unknown. (ECF No. 30, PageID.156-157.) But Federal Rule of Criminal Procedure 7(c)(1) permits an indictment to allege that "the means by which the defendant committed the offense are unknown." And—as Weiss is aware from discovery—where compromised technology providers are unknown, the government intends to prove unauthorized access through notes that Weiss kept of his intrusions and/or files in his possession that could only have been obtained from victim's private accounts.

Even at trial, Weiss's venue challenge will prove meritless; venue for a charge of unauthorized access is not limited merely to the location of the targeted server. Other factors can establish venue, most significantly the location from which the unauthorized access occurred. *See*, *e.g.*, *United States v. Aurenheimer*, 748 F.3d 525, 533-34 (examining the location from which unauthorized access occurred in the context of a venue challenge). In the Sixth Circuit, the use of the substantial contacts test also considers factors such as the location of witnesses and evidence. *See Hagar*, 822 Fed.Appx at 370.

The government expects that evidence at trial will prove that relevant conduct connected to each count alleged in the indictment occurred while Weiss lived and worked in the Eastern District of Michigan. The government also expects that evidence at trial will prove that Weiss committed at least some of the alleged crimes using University of Michigan resources, and that files obtained via unauthorized access were stored in and seized from locations in the Eastern District of Michigan. If Weiss wishes to run this gauntlet and challenge venue for specific counts, he can do so at trial.

## V.     Conclusion

For the reasons stated herein, defendant's motion should be denied.

                                         Respectfully submitted,

                                         JEROME F. GORGON JR.
                                       United States Attorney

                                       */s/ Timothy J. Wyse*
                                       Timothy J. Wyse
                                       Assistant U.S. Attorney
                                       211 West Fort, Suite 2001
February 11, 2026                    Detroit, Michigan 48226

## **Certificate of Service**

I certify that on February 11, 2026, I electronically filed this motion response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send to counsel of record.

s/Timothy J. Wyse
Assistant United States Attorney
